## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| HomeVestors of America, Inc., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. _____ |
| | § | |
| v. | § | |
| | § | |
| Harry W. Ridge, III, individually, and | § | |
| Progressive Real Estate Solutions PLLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff HomeVestors of America, Inc. ("HomeVestors") files this Original Complaint asserting claims against Defendants Harry W. Ridge, III ("Ridge") and Progressive Real Estate Solutions PLLC, doing business as VIP Realty Platinum ("VIP") (collectively, "Defendants") for trademark infringement in violation of 15 U.S.C. § 1114 (Section 32 of the Lanham Act) and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) (Section 43(a)(1)(A) of the Lanham Act), as well as trademark infringement, unfair competition, and unjust enrichment under Texas law.

HomeVestors seeks: (1) actual, treble, and exemplary damages from Defendants; (2) a preliminary injunction, and after trial, a permanent injunction; and (3) HomeVestors' attorney's fees and costs of court.

### I. PARTIES

1.      HomeVestors is a Delaware corporation with its principal place of business at 6500 Greenville Avenue, Suite 400, Dallas, Texas 75206.

2.      On information and belief, Ridge is an individual residing at 629 Naples Dr., Allen, TX 75013.  On information and belief, Ridge is a member and Chief Executive Officer of VIP and controls, directs, and acts for VIP.

3.      On information and belief, VIP is a Texas limited liability company with its principal place of business in Texas and may be served with process through the address listed with the Texas Secretary of State as the registered agent address located at 1400 Preston Rd., Suite 400, Plano, TX 75093.

4.      On information and belief, Ridge is the moving force behind the infringing activities complained of herein and has an interest in the financial outcome of VIP and its activities.  On information and belief, Paradigm Corporation with the address of P.O. Box 2109, Allen, TX 75013 and telephone number 214-470-5254 (both the address and telephone number associated with VIP) is listed as the registrant of the domain <viprealtyplatinum.com>, at which location Ridge and/or VIP operate viprealtyplatinumrealty .com (the "Website").  The domain and website are available to and directed at residents of this District.

## II. Jurisdiction and Venue

5.      The Court has subject-matter jurisdiction over the Lanham Act claims in this action under 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction over the Texas state law claims in this action under 28 U.S.C. § 1367 because these claims arise out of the same transactions and occurrences giving rise to the federal Lanham Act claims and are so related to those claims as to be a part of the same case or controversy.  The Court has original jurisdiction over HomeVestors' unfair competition claim under 28 U.S.C. § 1338(b).

6.      The Court has personal jurisdiction over Defendants because Defendants' contacts with the State of Texas and this District are so continuous and systematic as to render them essentially at home in the State of Texas and this District.  On information and belief, Ridge is a citizen, resident, and is domiciled in the State of Texas.  On information and belief, VIP is a Texas limited liability company and has its principal place of business in the State of Texas. The Court also has personal jurisdiction over Defendants because the acts that are the subject of HomeVestors' claims, including trademark infringement and unfair competition, were committed by Defendants, in part, in the State of Texas in this District.  Defendants conduct business primarily through the Website, which improperly uses HomeVestors' registered trademarks.  The website is an active site allowing customers to contact Defendants and submit information about homes the customers wish to sell.  Defendants are making commercial use of HomeVestors' registered trademark in Texas and this District.  As a result, Defendants are doing business in this District and committing acts of infringement, unfair competition, and other wrongs in this District.

7.      Under 28 U.S.C. § 1391(b)(1), venue is proper in this District because Defendants reside in this District and are residents of Texas.  Under 28 U.S.C. § 1391(c), VIP resides in this District because it is subject to the Court's personal jurisdiction with respect to HomeVestors' claims.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this District.

### III.  FACTUAL BACKGROUND

**A.      HomeVestors' business.**

8.      HomeVestors began franchising its business in 1996.  HomeVestors has over 600 franchisees across 44 states that operate under strict codes and systems to ensure high ethical

standards and responsible business practices.  Over the years, HomeVestors and its franchisees have bought more than 60,000 houses.

9.      HomeVestors is known as the WE BUY UGLY HOUSES® people and is the number one buyer of houses in the United States.  HomeVestors franchisees buy homes that are difficult to sell and pay cash to owners in challenging situations.  HomeVestors franchisees rehabilitate the houses and then sell or lease the homes.  This process improves neighborhood aesthetics and provides opportunities for first-time homebuyers, other homebuyers, and renters.

10.      HomeVestors offers low-cost franchising opportunities to investors seeking to enter the business.  Its unique business model includes a proprietary software system used in evaluating the potential value of single-family homes for purchase and repair.  HomeVestors and its franchisees also employ a mass advertising campaign based on high-impact billboards, nationwide television commercials, and widespread Internet advertising that has achieved nearly universal market awareness for HomeVestors' trademark portfolio, which is discussed in detail below.  HomeVestors also utilizes a direct-selling program that assists franchisees in identifying buyers or investors who may already have a vested interest in improving the relevant neighborhoods.

11.      HomeVestors has received numerous honors and awards.  In 2015, HomeVestors was recognized as the 19th fastest growing franchise by Entrepreneur Magazine. In 2016, HomeVestors was recognized as number 91 in the Franchise 500 by Entrepreneur Magazine.  Furthermore, in 2015, SMU Cox School of Business named HomeVestors as number 28 in the "Dallas 100" fastest-growing private companies based in Dallas.  HomeVestors was the only home buying franchise on each of those lists.  Also in 2015, and for the tenth consecutive year, HomeVestors was named to Franchise Business Review's "Top 50 Franchises," a distinction

awarded to franchisors with the highest level of franchisee satisfaction.  HomeVestors has built

substantial goodwill in its name and business practices among both consumers and its franchisees.

**B.     HomeVestors owns substantial trademark rights through its significant use in commerce of its trademarks.**

12.    HomeVestors possesses extensive valuable rights in its intellectual property,

including a family of U.S. trademarks listed in the chart attached hereto as Exhibit A

("HomeVestors' Registered Marks").

13.    HomeVestors owns and has used the Ugly Houses Marks (defined below) since at

least as early as 2000 and has built substantial brand-name recognition through the use of these

marks.  Through continuous and exclusive use in commerce, the HomeVestors Registered Marks

have achieved incontestable status.   Specifically, the following marks have become widely

recognized in the industry, and HomeVestors has built significant goodwill in those marks: WE

BUY UGLY HOUSES® & Design (Reg. No. 2,761,385); WE BUY UGLY HOUSES® (Reg. No.

3,099,814); COMPRAMOS CASAS FEAS® (Reg. No. 2,988,337); COMPRAMOS CASAS FEAS®

(Reg. No. 2,982,363); WE BUY UGLY HOUSES® (Reg. No. 2,999,705); WE BUY UGLY

HOUSES AND MAKE THEM NICE AGAIN® & Design (Reg. No. 2,827,136); UGLY'S OK®

Stylized (Reg. NO. 2,797,429); UGLY'S OK® (Reg. No. 2,794,480); WE SELL LUVLY

HOUSES.COM® (Reg. No. 3,658,442); THE UGLIEST HOUSE OF THE YEAR® (Reg. No.

3,641,362); THE UGLIEST HOUSE OF THE YEAR® & Design (Reg. No. 3,641,361); THE

GOOD, THE BAD AND THE UGLY® (Reg. No. 3,350,752); WE BUY THE GOOD, THE BAD

AND THE UGLY® (Reg. No. 3,307,918); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No.

3,188,593); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No. 3,185,390); UG BUYS UGLY

HOUSES® (Reg. No. 2,999,978); and UG BUYS UGLY HOUSES® (Reg. No. 2,935,916)

(Registration Nos. 2,761,385; 3,099,814; 2,988,337; 2,982,363; 2,999,705; and 2,827,136 are collectively referred to as the "Ugly Houses Marks").

14.    Over the years, HomeVestors has spent significant amounts of time and resources in developing its brand and maintaining the goodwill it has built in its trademarks. HomeVestors and its network of franchisees have spent over $100 million on advertising over the course of the past 10 years, which includes advertising on the Internet, radio, television, magazines, and billboards seen throughout the country. The HomeVestors brand is readily and widely recognized in the industry and among the general public.

**C.    Defendants operate the Website using the Ugly Houses Marks, thereby committing acts of infringement and unfair competition.**

15.    On information and belief, Defendants control and operate the Website. The Website is a direct competitor with HomeVestors and its franchisees. The Website advertises for the buying and selling of houses. Such advertising is directed to Texas residents, including those located in this District.

16.    On information and belief, the Website uses the Ugly Houses Marks in website text, hidden within source code, and in online ads directing consumers to the Website. This unauthorized use of the Ugly Houses Marks results in acts of infringement and unfair competition.

17.    At least as recently as January 2016, Defendants have used the Ugly Houses Marks and confusingly similar marks on their Website, including, but not limited to, within source code of the Website and within the text and hidden within source code of online ads directed to the Website.

18.    HomeVestors has contacted Ridge on numerous occasions, beginning in June 2013, regarding Defendants' infringing use of the Ugly Houses Marks.

19.     Despite multiple demands, Defendants continue to use the Ugly Houses Marks for the purpose of advertising and directing traffic to the Website.

*i.*     June 13, 2013 Acts

20.     On or about June 13, 2013, Defendants used the phrases "We Buy Ugly Houses" in bold text on the face of the Website, in the Website page title text section, embedded within source code of images and hidden within source code meta tags of the Website.[1]  Counsel for HomeVestors sent a letter to Defendants on June 18, 2013 and requested that Defendants cease all use of the Ugly Houses Marks.[2]

*ii.*     February 10, 2015 Acts

21.     On or about February 10, 2015, the Website contained the phrases "We Buy Ugly ___ Houses," "We Buy Ugly & Pretty ___ Houses" and similar phrases in bold and/or plain text repeatedly on the face of the pages of the Website embedded within source code of images and hidden within source code meta tags of the Website.[3]

*iii.*     March 15, 2015 Acts

22.     On or about March 15, 2015, the Website contained the phrases "We Buy Ugly Houses" within the source code of the Website and the phrases "We Buy Ugly ___ Houses," "We Buy Pretty & Ugly Houses," "We Buy Ugly & Pretty ___ Houses," "I Buy Ugly Houses," and "Ugly House(s)" repeatedly in bold and plain text on the face of the Website and hidden within source code.[4]

---

[1] *See* Exhibit B, a true and correct copy of image captures of a Website page and source code of the Website.
[2] *See* Exhibit C, a true and correct copy of the letter dated June 18, 2013 from M. Gray to Defendants.
[3] *See* Exhibit D, a true and correct copy of printouts of web pages of the Website, image captures of web pages showing their source code and the results of a site search of viprealtyplatinum.com showing over eighty unique results within the Website of infringing content.
[4] *See* Exhibit E, a true and correct copy of image captures of web pages of the Website showing their source code.

*iv.*     March 29, 2015 Acts

23.     On or about March 29, 2015, the Website contained the phrase "We Buy Ugly Houses" within the source code of embedded images.[5]

*v.*     March 30, 2015 Acts

24.     On or about March 30, 2015, the Website contained the phrase "We Buy Ugly Houses" within the source code title section of a link to Seller Testimonials, within the meta tags keywords section of source code and within the source code of an embedded image.[6]

*vi.*     May 8, 2015 Acts

25.     On or about May 8, 2015, the Website contained the phrases "We Buy Ugly Houses" and confusingly similar phrases within the Website source code and meta tags.[7]

*vii.*     May 22, 2015 Acts

26.     On or about May 22, 2015, the Website contained the phrase "We Buy Ugly Houses" within the source code title section of a link to Seller Testimonials, within the meta tags keywords section of source code and within the source code of an embedded image, and contained the phrase "Ugly House(s)" repeatedly within text on the face of the Website.[8]

*viii.*     July 29, 2015 Acts

27.     On or about July 29, 2015, the Website contained the phrase "We Buy Ugly Houses" hidden within source code of the Website.[9]

*ix.*     November 2, 2015 Acts

---

[5] *See* Exhibit F, a true and correct copy of image captures of a web page of the Website showing its source code.
[6] *See* Exhibit G, a true and correct copy of image captures of web pages of the Website showing their source code.
[7] *See* Exhibit H, a true and correct copy of image captures of web pages of the Website showing their source code.
[8] *See* Exhibit I, a true and correct copy of print outs of web pages and image captures of web pages of the Website showing their source code.
[9] *See* Exhibit J, a true and correct copy of an image capture of a web page of the Website showing its source code.

28.     On or about November 2, 2015, the Website contained the phrase "We Buy Ugly Houses" within the source code of the Website and contained the phrase "Ugly House(s)" repeatedly within text on the face of the Website.   The phrase "We Buy Ugly Houses" and confusingly similar phrases were used in social media pages advertising for and/or linking to the Website and in articles advertising for and linking to the Website.[10]

*x.*     January 4, 2016 Acts

29.     On or about January 4, 2016, the Website contained the phrase "Ugly House(s)" repeatedly throughout the text of the Website.   The phrase "We Buy Ugly Houses" and confusingly similar phrases were used in social media advertisements for the Website, in online article postings advertising for and linking to the Website and hidden within source code meta tags, links and images within the article postings.[11]

30.     Since June 18, 2013, counsel for HomeVestors has sent letters and emails to Defendants and made telephone calls, all requesting immediate cessation of all use of the Ugly Houses Marks.[12]   Although Defendants made modifications to the Website, Defendants continued to add use of the infringing marks.   As a result, HomeVestors was forced to escalate this matter to litigation.

**D.     Unless Defendants are enjoined, HomeVestors will suffer irreparable harm for which it has no remedy at law.**

31.     Unless Defendants are enjoined, HomeVestors will suffer irreparable harm. Defendants will continue to trade on the goodwill HomeVestors has built in its marks.

---

[10] *See* Exhibit K, a true and correct copy of print outs of web pages and image captures of web pages of the Website showing their source code.

[11] *See* Exhibit L, a true and correct copy of print outs and image captures of web pages of the Website and source code and print outs and image captures of social media pages and online article postings and their source code.

[12] *See, for example,* Exhibit M, true and correct of the most recent final demand letter dated November 11, 2015, which was sent by counsel for HomeVestors to Defendants.

Defendants will profit unfairly from their trademark infringement, unfair competition, and other wrongs.  Defendants will continue to use the trademark terms in which HomeVestors has built substantial goodwill within keyword advertisements on search engine websites.  Such keyword advertising diverts business that otherwise would belong to HomeVestors and causes initial interest confusion.  Moreover, HomeVestors has no ability to control the quality of the services provided by Defendants in conjunction with the Ugly Houses Marks, and therefore, is at an extreme risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

32.    By way of example, if customers of Defendants experience inferior services, they will likely mistakenly attribute that bad experience to HomeVestors and its franchisees due to Defendants' adoption of the same marks.  This is heightened by Defendants' strategy to provide the same or similar services to the same customer base using the same advertising channels in connection with the same marks.  As established above, these actions are taken intentionally by Defendants as part of a scheme to trade on the goodwill built by HomeVestors through its investment of time, efforts, and advertising in the HomeVestors Registered Marks.  Defendants are intentionally trading off the goodwill HomeVestors has built up in its marks over years of use and promotion.

## IV. CLAIMS

### Count 1 – Trademark Infringement Under 15 U.S.C. § 1114 (Section 32 of the Lanham Act)

33.    HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

34.    Defendants' acts committed in the course of Internet commerce constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, of the Ugly Houses Marks.  As established by the registration for the marks, the marks are protectable

and enforceable against Defendants, HomeVestors is the owner of the marks, and HomeVestors is the senior user of the marks.  Moreover, Defendants' actions have caused a likelihood of confusion and damage to HomeVestors.  In particular, through the infringing use of the Ugly Houses Marks, Defendants are harming HomeVestors and diverting sales that would otherwise go to HomeVestors.  Defendants' use of the Ugly Houses Marks is likely to cause confusion and mistake as to the source of Defendants' services.

35.     In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be primarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

36.     Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants:  (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action.  Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its actual damages.  Due to the exceptional nature of this case, HomeVestors also seeks its reasonable attorney's fees.

**Count 2 – Unfair Competition Under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)**

37.     HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth at herein.

38.     Defendants' acts committed in the course of interstate commerce constitute materially false and misleading misrepresentations of fact with respect to the origin of Defendants' services, and the affiliation, sponsorship, and approval of Defendants' services in violation of Section 43(a)(1)(A) of the Lanham Act.  15 U.S.C. § 1125(a)(1)(A).

39.     In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

40.     Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants:  (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action.  Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its damages.  Due to the exceptional nature of this case, HomeVestors seeks its reasonable attorney's fees.

**Count 3 – Trademark Infringement in Violation of Texas Law**

41.     HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

42.     As established above, HomeVestors is the senior user of its marks and enjoys priority over Defendants.  HomeVestors' substantial use of these marks in commerce has resulted in the marks being protectable and enforceable.  Defendants' use in commerce of the Ugly Houses

Marks and confusingly similar marks in connection with competing services constitute infringement of HomeVestors' common-law rights to its marks.  Defendants' use of the marks is likely to cause confusion or mistake as to the source of Defendants' services.

43.    In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword bidding or advertising, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

**Count 4 – Unfair Competition under Texas Law**

44.    HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

45.    Defendants have engaged in commerce in the State of Texas and this judicial district by marketing, offering to sell, and selling Defendants' competing services.  Defendants have advertised their services on their active website.  Defendants have competed unfairly in violation of Texas law by misrepresenting or misleading the public to believe that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors.

46.    In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy,

social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

47.    HomeVestors has been damaged by Defendants' actions.   Under Texas law, HomeVestors is entitled to recover its actual damages caused by Defendants' unfair competition and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

**Count 5 – Unjust Enrichment Under Texas Law**

48.    HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

49.    As set forth above, Defendants have used the Ugly Houses Marks and HomeVestors' goodwill as an integral step of Defendants' sales of their services.  On information and belief, Defendants have received a direct pecuniary benefit from these unlawful acts. Defendants are therefore unjustly enriched to HomeVestors' detriment.  As a result, HomeVestors is entitled to recover its actual damages caused by Defendants' unjust enrichment.

### V. APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

50.    HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

51.    On information and belief, Defendants, unless enjoined, will continue to misrepresent to or mislead the public into believing that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors and infringe the Ugly Houses Marks by using those marks or confusingly similar variations thereof to identify Defendants' competing services.

52.    All of these acts violate the Lanham Act and Texas law.

53.     These actions entitle HomeVestors to a preliminary injunction and, upon hearing, permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all those persons in active concert or in participation with them from:

(i)     Representing Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by HomeVestors;

(ii)    Representing Defendants are HomeVestors;

(iii)   Using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, or otherwise, to market, advertise, or identify Defendant's services; and

(iv)    Otherwise competing unfairly with HomeVestors or injuring its business reputation in any manner.

54.     For these actions, there is no adequate remedy at law.  Further, HomeVestors is substantially likely to prevail on the merits of these claims.  The injury to HomeVestors greatly outweighs any injury to Defendants that the requested injunction may cause.  The balance of hardships tips strongly in favor of HomeVestors.  Finally, the injunction will not disserve the public interest.  Therefore, HomeVestors is entitled to preliminary and permanent injunctive relief against Defendants.

## VI. REQUEST FOR RELIEF

For the foregoing reasons, HomeVestors respectfully requests the Court to:

1.      Award HomeVestors its actual, treble, and exemplary damages;

2.      In accordance with Texas law and 15 U.S.C. § 1116, issue a preliminary and permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with Defendants from the acts described in this Complaint;

3.      Order Defendants and their officers, agents, servants, employees, franchisees, and all those persons in active concert or participation with them, to identify all third parties to whom Defendants have represented themselves to be the organization behind the Ugly Houses Marks or somehow sponsored by, approved by, affiliated with, or associated with HomeVestors and all third parties to whom Defendants have distributed any type of materials incorporating the Ugly Houses Marks;

4.      Order Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with them, to identify all other websites containing the Ugly Houses Marks;

5.      Order Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe the Ugly Houses Marks and that are falsely designated as being sponsored by, approved by, affiliated with, or associated with HomeVestors;

6.      In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the Ugly Houses Marks be surrendered for destruction;

7.      In accordance with Texas law and 15 U.S.C. §§ 1117(a) and (d), award HomeVestors all of Defendants' profits from the aforesaid acts of unjust enrichment, trademark infringement, and unfair competition;

8.      In accordance with Texas law and 15 U.S.C. § 1117(a), find this case to be exceptional in HomeVestors' favor and award HomeVestors its reasonable attorney's fees, costs, and expenses of this action;

9.      Award HomeVestors its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate; and

10.      Grant HomeVestors such other relief, at law or in equity, to which it is justly entitled.

Dated:  February 4, 2016                    Respectfully submitted,

                                            KLEMCHUK LLP

                                            /s/ Aaron D. Davidson
                                            Aaron D. Davidson
                                            Aaron.Davidson@klemchuk.com
                                            Texas State Bar No. 24007080
                                            Darin M. Klemchuk
                                            Darin.Klemchuk@klemchuk.com
                                            Texas State Bar No. 24002418
                                            Corey Weinstein
                                            Corey.Weinstein@klemchuk.com
                                            Texas State Bar No. 24037685

                                            8150 N. Central Expressway, 10th Floor
                                            Dallas, TX 75206
                                            P.  214.367.6000
                                            F.  214.367.6001

                                            ATTORNEYS FOR PLAINTIFF
                                            HOMEVESTORS OF AMERICA, INC.